**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Jefferey Yates,                                                               Case No. 3:17CV1389

             Plaintiff

             v.                                                      **ORDER**

Rodney Nichols, et al.,

             Defendants

This is a breach-of-fiduciary-duty and putative class-action case arising under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq.*

In 2011, Marathon Petroleum spun off from its parent company, Marathon Oil. When Marathon Petroleum established its employee-retirement plan, the defendants – plan administrator Rodney Nichols, the plan's investment committee, and members of that committee – allegedly placed $88 million in plan assets into a fund holding only Marathon Oil common stock. Participants could then hold the stock or sell it and invest the proceeds in a different fund, but they could not purchase additional Marathon Oil stock.

At the time of the plan's creation, Marathon Oil stock traded at $33.28 per share. (Doc. 1 at ¶54). Within months of the spin-off, shares had dropped below $20; by mid-June, 2017, Marathon Oil's stock was worth less than $13 per share. (*Id.*).

Plaintiff Jefferey Yates, a former Marathon Petroleum employee and plan participant, brought this suit in June, 2017, on behalf of himself, the Marathon Petroleum Thrift Plan, and all similarly

situated plan participants. He raises essentially three claims for breaches of the defendants' fiduciary duties and a claim of co-fiduciary liability.

First, plaintiff alleges that defendants breached their duty to offer only prudent investments by allowing participants to hold Marathon Oil stock, which Yates characterizes as excessively risky.

Second, plaintiff claims that defendants failed to conduct an adequate investigation before permitting participants to hold Marathon Oil stock. According to plaintiff, defendants authorized this investment option because they: 1) wanted to "mirror" the investment options in Marathon Oil's employee-retirement plan; and 2) wrongly assumed that the stock was an "employer security," 29 U.S.C. § 1107(d)(1), that was exempt from the duty to diversify plan assets.

Third, plaintiff alleges that defendants breached their duty to diversify the plan's assets by placing $88 million, or 6.5% of the plan's total assets, into a fund holding only Marathon Oil stock.

Jurisdiction is proper under 28 U.S.C. § 1331.

Pending is the defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6). (Doc. 18). For the following reasons, I grant the motion to dismiss with prejudice.

**Background**

Before the spin-off, Marathon Oil engaged in "upstream" and "downstream" energy operations: the former entailed oil-and-gas exploration and production, and the latter refining, marketing, and transportation. (Doc. 18–1 at 4). On June 30, 2011, Marathon Petroleum separated from Marathon Oil. It assumed responsibility for the downstream operations, and Marathon Oil managed the upstream operations. (Doc. 1 at ¶8; Doc. 18–1 at 4).

**A. The Plan**

Marathon Petroleum established its employee-benefit plan on July 1, 2011.

The plan is a defined-contribution, 401(k) plan that is open to "all employees of Marathon Petroleum that meet certain eligibility requirements." (Doc. 1 at ¶20; Doc. 18–2 at 56–57).

Participants had the option of investing in four "tiers" of funds. Tier 1 included twenty-one index or mutual funds; Tier 2 included 12 "lifecycle" funds aimed at participants' varying retirement dates; Tier 3 offered thousands of mutual-fund options through Fidelity Brokerage; and Tier 4 included the common stock of both Marathon Petroleum and Marathon Oil. (Doc. 18–2 at 56–57).

The plan authorized defendants to "add, modify, or delete any investment option as they may deem appropriate" and to do so at any time. (*Id.* at 20; Doc. 1 at ¶3).

Nevertheless, plaintiff alleges, defendants exercised essentially no independent judgment when they selected the plan's investment options. (Doc. 1 at ¶¶3, 34). Rather, defendants decided simply to "mirror" the investment options that Marathon Oil had offered to its employees. (*Id.* at ¶3). The two plans' investment options thus overlapped entirely, with the exception that only participants in Marathon Petroleum's plan could purchase Marathon Petroleum stock. (*Id.* at ¶¶36–38).

**B. Marathon Oil Stock**

After the spin-off, many Marathon Oil employees became employees of Marathon Petroleum. And many of those employees, by virtue of their participation in Marathon Oil's employee-retirement plan, owned Marathon Oil stock.

Accordingly, when defendants established the plan, they permitted participants who held Marathon Oil stock to retain that stock or sell it and move the proceeds to a different investment option.[1] But the defendants also designated the Marathon Oil stock fund as a "frozen" investment

---

[1] The parties offer slightly different characterizations of the defendants' actions in permitting plan participants to hold Marathon Oil stock after the spin-off. Plaintiff implies that defendants allowed the participants to make, in essence, a new investment by purchasing Marathon Oil stock.

3

option, meaning that participants could not purchase additional Marathon Oil stock. (Doc. 18–2 at 19–20, 57).

At the beginning of the class period (July 1, 2011, *see* Doc. 1 at ¶74), the plan held $88 million of Marathon Oil stock. As already noted, this amounted to roughly 6.5% of the plan's $1.5 billion in assets. According to plaintiff, the Marathon Oil stock "represented the third largest investment in the plan." (*Id.* at ¶26).

Marathon Oil "is in the oil and gas industry, a very volatile, high-risk sector of the economy subject to frequent boom-and-bust cycles." (*Id.* at ¶4).

According to plaintiff, Marathon Oil has admitted that "its stock price and earnings are highly dependent on the prices of liquid hydrocarbons (oil) and natural gas, which 'fluctuate widely,' 'have been volatile,' and 'may continue to be volatile.'" (*Id.* at ¶47). Plaintiff alleges that, during the class period, "Marathon Oil stock experienced precisely the volatility and poor performance that might be expected" of a single-stock investment within a volatile sector of the economy. (*Id.* at ¶48).

As examples, plaintiff notes that, in mid-2014, "Marathon Oil's price per share declined by over 30%." (*Id.* at ¶56). Contemporaneous market information also indicated that "energy prices would remain low in the future – warning signs that the Defendants should have recognized would cause the price of Marathon Oil stock to drop further." (*Id.*). Finally, a series of market forecasts from December, 2014, through December, 2015, predicted "high uncertainty in the price of oil" and a likelihood of lower oil prices. (*Id.* at ¶58).

---

Defendants, in contrast, emphasize that they merely allowed participants who already held Marathon Oil stock to continue to do so. The proper characterization of defendants' decision is not material to the adjudication of the motion to dismiss.

4

For these reasons, plaintiff maintains, "there should have been heightened cause for concern" when it came to holding the Marathon Oil stock. (*Id.* at ¶46). Nevertheless, defendants permitted participants to retain or invest in Marathon Oil stock and took no steps to divest, even after the negative market conditions emerged in late 2014 and the stock's price plummeted in 2015.

According to plaintiff, the defendants' alleged breaches of their fiduciary caused the plan and its participants to lose roughly $58 million. (*Id.* at ¶54).

**Standard of Review**

A complaint must contain a "short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**Discussion**

**A. Prudence**

Plaintiff first alleges that defendants breached their duty of prudence by permitting participants to invest in Marathon Oil common stock. According to plaintiff, the Marathon Oil stock was excessively risky and thus an imprudent option for an employee-retirement plan.

Plaintiff emphasizes that, in general, "a single-stock fund, particularly in a volatile industry like energy, is always risky[.]" (*Id.* at ¶45). Regarding the Marathon Oil stock specifically, plaintiff points to Marathon Oil's admission that its earnings and stock price depend heavily on oil and gas

5

prices, which "fluctuate widely." (*Id.* at ¶47). He also relies on stock market bulletins and analyses forecasting uncertainty in the energy market and probable declines in oil prices. (*Id.* at ¶¶56–58).

### 1. Duty of Prudence

"ERISA requires the fiduciary of a pension plan to act prudently in managing the plan's assets." *Pfeil v. State Street Bank & Trust Co.*, 806 F.3d 377, 383 (6th Cir. 2015). The statute imposes "a prudent person standard by which to measure fiduciaries' investment decisions and disposition of assets and also imposes other obligations." *Id.* (internal quotation marks and citation omitted).

Under ERISA, as under the common law of trusts, "a fiduciary normally has a continuing duty of some kind to monitor investments and remove imprudent ones." *Tibble v. Edison Int'l*, --- U.S. ----, 135 S. Ct. 1823, 1828–29 (2015). Accordingly, "a plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones." *Id.* at 1829.

### 2. *Dudenhoeffer* Forecloses the Prudence Claim

In *Fifth Third Bancorp v. Dudenhoeffer*, --- U.S. ---, 134 S. Ct. 2459, 2471 (2014), the Supreme Court held that, "where a stock is publicly traded, allegations that a fiduciary should have recognized from publicly available information alone that the market was over- or undervaluing the stock are implausible as a general rule, at least in the absence of special circumstances."

The Court explained that "[m]any investors take the view that they have little hope of outperforming the market in the long run based solely on their analysis of publicly available information." *Id.* For that reason, investors "rely on the security's market price as an unbiased assessment of the security's value in light of all public information." *Id.*

6

Accordingly, the Court concluded that "ERISA fiduciaries, who likewise could reasonably see little hope of outperforming the market . . . based solely on publicly available information, may, as a general matter, likewise prudently rely on the market price." *Id.*

### a. The Claim Rests Entirely on Publicly Available Information

Here, plaintiff's claim that the defendants breached the duty of prudence by investing in Marathon Oil, and by failing to make a timely divestiture, depends entirely on publicly available information. (Doc. 1 at ¶¶56–62) (publicly available information that defendants allegedly ignored). In the absence of special circumstances, then, the claim will be implausible.

### b. There Are No "Special Circumstances"

*Dudenhoeffer* will not bar a prudence claim that rests entirely on publicly available information if "special circumstances" are present. According to the Supreme Court, "special circumstances" are things that affect "the reliability of the market price as an unbiased assessment of the security's value in light of all public information" and "would make reliance on the market's valuation imprudent." *Dudenhoeffer*, *supra*, --- U.S. at ---, 134 S. Ct. at 2471.

No case from the Sixth Circuit (or, it appears, from any other circuit court, *e.g.*, *Coburn v. Evercore Trust Co.*, 844 F.3d 965 (D.C. Cir. 2016)), has found "special circumstances" that preclude a fiduciary from relying on a security's market price when making investment decisions. Indeed, the Circuit has set a high bar for the exception, concluding in *Pfeil*, *supra*, 806 F.3d at 380, that not even a company's "severe business problems that resulted, ultimately, in its bankruptcy" constituted special circumstances.[2]

---

[2] In *dicta*, the Circuit has suggested that "the only way to plead 'special circumstances' [is] to show that [the security] traded on an inefficient market." *Saumer v. Cliffs Nat. Res., Inc.*, 853 F.3d 855, 862 (6th Cir. 2017).

Plaintiff's opposition brief does not appear to identify any "special circumstances."

The closest plaintiff comes to challenging defendants' reliance on Marathon Oil's stock price are his allegations that defendants failed to engage in a "prudent decision-making process." (Doc. 1 at ¶50). But Sixth Circuit precedent holds that these types of omissions are not "special circumstances." *Saumer*, *supra*, 853 F.3d at 862 (the exception for special circumstances "doesn't include a fiduciary's failure to independently verify the accuracy of the market's pricing").

### c. Plaintiff's Attempts to Distinguish *Dudenhoeffer* Are Unpersuasive

Seeming to recognize that *Dudenhoeffer* forecloses his prudence claim, plaintiff argues that its rule should not apply here. (Doc. 19 at 15–17).

Plaintiff first contends that *Dudenhoeffer* applies only to prudence claims alleging that a particular stock is either over- or undervalued, and not to claims that the stock is too risky or volatile. (*Id.* at 15). But the Sixth Circuit has rejected this argument. In *Saumer*, *supra*, 853 F.3d at 862, the Circuit read *Dudenhoeffer* to foreclose "breach of prudence claims based on public information irrespective of whether such claims are characterized as based on alleged overvaluation or alleged riskiness of a stock."

Plaintiff also contends that *Dudenhoeffer* applies only when the investment at issue is either an "employer security" or an employee stock-ownership plan (ESOP), but this is a misreading of *Dudenhoeffer*.

The principal issue in *Dudenhoeffer* was whether, when a plaintiff challenged an ESOP fiduciary's decision to buy or hold the employer's stock as imprudent, "the fiduciary is entitled to a defense-friendly standard . . . called a 'presumption of prudence.'" --- U.S. at ---, 134 S. Ct. at 2463.

In rejecting that presumption, the Court held that "the same standard of prudence applies to all ERISA fiduciaries, including ESOP fiduciaries," with the limited exception that ESOP fiduciaries are "under no duty to diversify the ESOP's holdings." *Id.*; *see also id.* at 2467 ("ESOP fiduciaries are subject to the duty of prudence just as other ERISA fiduciaries are"). Having clarified that point, the Court held that an ERISA fiduciary's assumption that "a major stock market . . . provides the best estimate of the value of the stocks traded on it that is available to him" would never, absent special circumstances, support a plausible prudence claim. *Id.* at 2472.

Accordingly, there is no basis in *Dudenhoeffer* for limiting its rule to cases involving employer securities or ESOPs.

For these reasons, plaintiff has not stated a plausible claim for breach of the duty of prudence.

## B. Investigation

Plaintiff's second claim is that defendants breached their fiduciary duties by failing to conduct "an appropriate investigation of the merits of continued investment in Marathon Oil." (Doc. 1 at ¶86).

### 1. Duty to Investigate

To plead a failure-to-investigate claim, "plaintiffs must allege facts that, if proved, would show that an adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was imprudent." *Rinehart v. Lehman Bros. Holdings Inc.*, 817 F.3d 56, 67 (2d Cir. 2016). If the plaintiff cannot allege facts that "directly address the process by which the Plan was managed," then the plaintiff can plead circumstantial facts that permit the court to "infer from what is alleged that the process is flawed." *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt., Inc.*, 712 F.3d 705, 718 (2d Cir. 2013).

9

"[A]lthough a fiduciary generally must investigate an investment's merits, a fiduciary's failure to investigate an investment decision *alone* is not sufficient to show that the decision was not reasonable." *Saumer*, *supra*, 853 F.3d at 863 (emphasis in original). Instead, "a plaintiff must show a causal link between the failure to investigate and the harm suffered by the plan." *Id.*

### 2. Even If the Defendants' Investigation Had Been Inadequate, Plaintiff Has Not Plausibly Alleged Causation

Plaintiff alleges that defendants "did not affirmatively choose to have the Plan invest in Marathon Oil stock" and "failed to conduct an appropriate investigation of the merits of continued investment in Marathon Oil." (Doc. 1 at ¶¶49, 86). Likewise, he contends that defendants "failed to engage in a prudent decision-making process with respect to the continued prudence of invested [*sic*] in such a concentrated single security." (*Id.* at ¶50).

But these are simply legal conclusions that I can disregard, not factual allegations I must accept as true. *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011).

Plaintiff comes closer to pleading an inadequate investigation by alleging that defendants offered the Marathon Oil stock because they were simply "mirroring" the Marathon Oil plan's menu of investments, and because of a mistaken belief that the Marathon Oil stock would, after the spin-off, remain an "employer security" exempt from the duty to diversify. (*Id.* at ¶¶36, 39, 49).

These allegations have some tendency to show that defendants' investigation was inadequate, as they suggest that defendants' focus was not on the merits, prudence, or suitability of investing in Marathon Oil stock. Instead, the defendants apparently figured that the Marathon Oil stock would be a safe bet because it had worked for the Marathon Oil plan, and the defendants would not need to worry about diversifying an investment in such an "employer security." Such a focus could

10

conceivably have led defendants to disregard the risks that investing in Marathon Oil stock posed to the participants in Marathon Petroleum's plan.

In any event, I need not decide whether plaintiff has plausibly alleged that the investigation was inadequate. This is so because plaintiff has not plausibly alleged "a causal link between the failure to investigate and the harm suffered by the plan." *Saumer*, *supra*, 853 F.3d at 863.

Here, plaintiff alleges only that, had the defendants conducted an adequate investigation, they would have learned of the publicly available information purportedly establishing that Marathon Oil stock was an excessively risky investment.

*Dudenhoeffer* makes clear, however, that defendants could have prudently ignored that information and, instead, "take[n] the view that they ha[d] little hope of outperforming the market in the long run based solely on their analysis of [that] publicly available information." *Dudenhoeffer*, *supra*, 134 S. Ct. at 2471.

In other words, any breach of the defendants' duty to investigate did not cause a loss to the plan, for, even in the face of adverse public information about Marathon Oil stock, defendants could have prudently "rel[ied] on the security's market price as an unbiased assessment of the security's value in light of all public information." *Id.*; *see also Saumer*, *supra*, 853 F.3d at 863 (rejecting failure-to-investigate claim where "plaintiffs have not pled what, if anything, the fiduciaries might've gleaned from publicly available information that would undermine reliance on the market price").

Finally, I agree with the defendants that, absent an investment that is either imprudent or improperly diversified, there can be no recovery for a failure to investigate. *See Saumer*, *supra*, 853 F.3d at 863 ("a fiduciary's failure to investigate an investment decision *alone* is not sufficient to show that the decision was not reasonable") (emphasis in original); *Rinehart*, *supra*, 817 F.3d at 68

11

("Plaintiffs cannot maintain a claim for breach of the duty to monitor . . . absent an underlying breach of the duties imposed under ERISA"); *Plasterers' Local Union No. 96 Pension Plan v. Pepper*, 663 F.3d 210, 217 (4th Cir. 2011) ("The finding that the Former Trustees breached their fiduciary duties to investigate and diversify did not establish as a matter of law that the actual investments were imprudent and liability can only attach if in fact that is the case.").

As I have explained above, and as I set forth below, plaintiff's prudence and diversification claims are themselves implausible. Accordingly, plaintiff has not, for this additional reason, stated a plausible failure-to-investigate claim.

## C. Diversification

Plaintiff's third claim alleges that defendants breached their duty to diversify plan assets when they invested $88 million, or 6.5% of the plan's funds, in Marathon Oil stock.

In plaintiff's view, ERISA strongly disfavors this kind of single-security investment option. (Doc. 19 at 11). Plaintiff also argues that, in evaluating whether the defendants violated their duty to diversify, I should ignore the plan's overall menu of investment options and consider only whether the investment in Marathon Oil stock was inadequately diversified.

### 1. Duty to Diversify

An ERISA fiduciary must "diversif[y] the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so." 29 U.S.C. § 1104(a)(1)(C). "Under the duty of diversification, the trustee should not normally invest all or an unduly large portion of plan funds in a single security, or in any one type of security, or even in various types of securities that depend on the success of one enterprise." *Bruner v. Boatmen's Trust Co.*, 918 F. Supp. 1347, 1353 (E.D. Mo. 1996).

## 2. Measuring Diversification

Defendants contend that plaintiff has no diversification claim because "the Plan was, and is, amply diversified." (Doc. 18–1 at 10). They explain that participants "could invest in numerous investment options on the Plan menu, plus thousands of additional mutual funds through a brokerage window." (*Id.*).

In support of their position, defendants rely on *Young v. Gen. Motors Inv. Mgmt. Corp.*, 325 F. App'x 31 (2d Cir. 2009).

Plaintiffs in that case alleged that defendants breached their duty to diversify plan assets by "offer[ing] undiversified single-equity funds that they knew were too risky and volatile as investments for a pension plan[.]" *Id.* at 32 (internal alterations omitted). But the Second Circuit held that the plaintiffs' "narrow focus on a few individual funds, rather than the plan as [a] whole, is insufficient to state a claim for lack of diversification":

> ERISA section 404(a)(1) requires a fiduciary to diversif[y] the investments of the plan so as to minimize the risk of large losses." 29 U.S.C. § 1104(a)(1)(C). The language of this section contemplates a failure to diversify claim when a plan is undiversified as a whole. Plaintiffs only allege that individual funds within the plan were undiversified. The complaint's narrow focus on a few individual funds, rather than the plan as [a] whole, is insufficient to state a claim for lack of diversification. Although plaintiffs argue that the failure to diversify is a fact-intensive inquiry that ordinarily cannot be resolved on the pleadings, plaintiffs' claim cannot survive defendants' motion to dismiss in the absence of allegations that suggest the fund was undiversified as a whole.

*Id.*

Plaintiff responds that I can, and should, consider the diversification question at the individual fund level. To support his position, plaintiff relies on *Spano v. The Boeing Co.*, 125 F. Supp. 3d 848 (S.D. Ill. 2014).

In that case, participants in Boeing's 401(k) plan alleged that one of the plan's eleven investment options – the so-called "Technology Fund" – was an imprudent investment because it was "undiversified" and "concentrated in the technology sector," which plaintiffs maintained was a risky, volatile sector of the economy. *Id.* at 869.

The district court found that fact questions precluded summary judgment. *Id.* at 869–70. In so holding, the court explained that plaintiffs were challenging "the offering and retention of these particular concentrated funds, in this particular sector, given that particular atmosphere." *Id.* at 869. Because the court in *Spano* resolved the summary-judgment motion by looking only at the Technology Fund, as opposed to the 401(k) plan as a whole, plaintiff argues that I should employ a similar approach here.

### 3. Plaintiff's Claim Is Not Plausible

Having considered the parties' arguments and reviewed the relatively sparse case law on this question, I agree with the defendants that plaintiff has not stated a plausible diversification claim.

First, while the defendants were able to muster only one unpublished case – *Young*, *supra* – to support their position, that case is squarely on point and persuasive. As the Second Circuit explained in that case, because ERISA requires that fiduciaries diversify "the investments of the plan," the statute "contemplates a failure to diversify claim when a plan is undiversified as a whole." *Young*, *supra*, 325 F. App'x at 33.

In contrast, *Spano*, on which plaintiff relies, did not even address a claim for breach of the duty to diversify. Rather, it addressed a duty-of-prudence claim. *See Spano*, *supra*, 125 F. Supp. 3d at 869 ("Plaintiffs contend that Boeing offered *an imprudently risky* concentrated sector fund for the

purpose of benefitting a corporate relationship, rather than for the sole benefit of the Participants[.]")
(emphasis supplied).

Second, evaluating the plan as a whole makes good sense when the plan at issue is, like the Marathon Petroleum plan, a defined-contribution plan where each participant has his or her own account. (Doc. 1 at ¶22).

In these cases, the plan participants themselves – rather than the plan's trustees or its investment committee – decide how to allocate their contributions among the plan's investment options. The trustees and the investment committee, in other words, have no ability to enforce the diversification requirement on the participants. All they can do, it would seem, is offer a diversified menu of investment options. What seems most critical, then, at least in terms of the trustees' diversification duty, is the range of investment options available to the participants.

Here, there is no question that the Marathon Petroleum plan, taken as a whole, offered diverse options. (Doc. 18–2 at 56–57) (list of investment options). Moreover, 93.5% of the plan's assets were in funds that plaintiff has not challenged as imprudent, undiversified, or otherwise improper.

Third, as the Fourth Circuit has observed, ERISA's "legislative history and federal regulations clarify that the diversification and prudence duties do not prohibit a plan trustee from holding single-stock investments as an option in a plan that includes a portfolio of diversified funds." *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 356 (4th Cir. 2014).

But the logical endpoint of plaintiff's argument seems to be that offering a single-stock investment option within a defined-contribution plan always violates the duty of prudence. After all, a single-stock investment option will always be risky, given that the value of the investment depends

exclusively on the success of the issuing company. Furthermore, plaintiff has not explained why it is that placing a mere 6.5% of the plan assets – as opposed to some other amount – in Marathon Oil stock breached the defendants' diversification duties.

Finally, and putting all of the foregoing to one side, there are certainly cases where focusing on a single investment within a plan's investment options – without regard to the plan's overall menu – can plausibly show a lack of diversification.

For example, courts have found a lack of diversification where: 1) 70% of a fund's assets were in United States 30–year Treasury Bonds, *GIW Indus., Inc. v. Trevor, Stewart, Burton & Jacobsen, Inc.*, 895 F.2d 729 (11th Cir. 1990); 2) a fund had invested between 65% and 85% of its assets in mortgages within a narrow geographical area, *Brock v. Citizens Bank of Clovis*, 841 F.2d 344 (10th Cir. 1988); and 3) a fund used 23% of its assets to finance a highly speculative real estate venture, *Marshall v. Glass/Metal Assoc. & Glaziers & Glassworkers Pension Plan*, 507 F. Supp. 378 (D. Haw. 1980).

But these scenarios are a far cry from what the plaintiff alleges here: a relatively small portion of the plan's assets (6.5%) in a frozen single-stock option investment, while the vast majority of the assets (93.5%) were in prudent, diversified investments.

For all these reasons, I conclude that plaintiff has not stated a plausible diversification claim.[3]

---

[3] Given this ruling, I do not reach the parties' dispute as to whether, after the spin-off, the Marathon Oil stock that the plan participants held remained an "employee security" under 29 U.S.C. § 1107(d)(1) that was exempt from the duty to diversify.

## Conclusion

Plaintiff has not plausibly alleged that defendants breached their fiduciary duties to offer only prudent investments, conduct an adequate investigation, or diversify the plan's assets. Absent such a claim, plaintiff's claim for co-fiduciary liability fails as a matter of law.

It is, therefore,

ORDERED THAT the defendants' motion to dismiss (Doc. 18) be, and the same hereby is, granted with prejudice.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge